Good morning and welcome. Judge McEwen, Judge Johnstone, and I are so pleased that you're able to join us today. Thank you for coming. We have a number of matters that were submitted on the briefs. Those are Perez-Garcia v. Garland, Zepeda-Martinez v. Garland, Ouvray v. National Labor Relations Board. And the remaining three cases will be argued. First matter is 10 minutes per side. So if counsel would like to specify how much time you'd like to reserve for rebuttal. Good morning, Your Honors, and may it please the Court. Sophia Rios from Berger Montag on behalf of Plaintiff Appellant Paul Osheske. I'd like to reserve three minutes of my time for rebuttal. Go ahead, please. The Video Privacy Protection Act protects the privacy of consumer data revealing movie choices. Congress intended to protect the privacy of that data regardless of the business model or technology used to deliver the movies to consumers. And it did a remarkably good job at achieving that goal. The law that was passed in 1988 has broad language that has remained relevant to this day, even though technology has changed the way that businesses transact with and deliver movies to consumers. Landmark interpretation undoes much of the good work of Congress. Ms. Rios, what do we do about the fact that the motion picture technology was well established and they seem to choose not to use those terms? Congress did not identify any providers in the statute or in the legislative history. Instead, they identified conduct that would qualify a provider. Video rental stores are not even mentioned in the text of the statute. Well, videotape service provider is a start, and then we're looking for things similar to that. Yes, we are. So, movie theaters have always been in the business of delivering movies to consumers. And so, it is not plaintiff's position that changing technology for the delivery of movies has brought movie theaters within the scope of the Act. Instead, they have always been within the scope of the Act. It is now the way that consumers purchase movie tickets that has changed. But didn't you make a different argument in your reply brief? You actually said, no, movie theaters were not included in the Act because there were no credit card transactions at the time this law was enacted, and everything was transacted in cash. So, I'm hearing you actually say something different this morning. So, plaintiff's position is that movie theaters have always been providers. However, they did not have to worry about complying with the law because they had none of the data that is regulated by the Act. There was no personal... So, you're conceding at the time this Act did not envision encompassing movie theaters. I don't concede... You might quibble with the reason why, but you're agreeing at the time it was not envisioning movie theaters being covered. Congress did have at the forefront of its mind a video rental store when it passed the Act, but it drafted such broad language so that it would be flexible enough to apply to different business models, including movie theaters. Well, it had the opportunity to amend the Act, which it did, and it didn't do anything that would necessarily bring movie theaters within the scope of the Act, did it? No, it did not change the definition of provider in any way because that language was already broad enough to apply to changing technology. And movie theaters are a prime example of changing technology, even since 2013. Movie ticket sales online were just a small portion of overall ticket sales in 2013. I think we're kind of getting far afield from the statute at this point. So, if we go back and you look at rental, sale, and delivery, let's take the first of those two. Do you contend that movie theaters rent the movie to the participants or the moviegoers? Plaintiffs rely primarily on the definition... No, I'm just asking yes or no. Does rental apply to the movie theater business? It could apply to movie theater business. How? So, to rent is to a temporary enjoyment of a movie for a set period of time. When you enter a movie theater, you have access to that movie. So, you would say that when we go to the movies that Disney or whomever is renting the movie to us, I mean, I find that to be a fairly extreme interpretation of the statute. And that's not plaintiff's primary interpretation of the statute. Then I'll ask you the next one. When you go to a movie theater, is the theater selling you the movie in your view? No, they are not selling you the movie. So, then the third prong, which I know you focused on, is deliver. But when we're looking at statutes, we do have to look at the cousins or the relatives of what is in the statute, rental, sale, and delivery. So, you're saying that when you go to a movie theater that the theater is actually delivering to you a movie. Yes, Your Honor. And do you have any possessory or other right during that transitory time that you sit in the movie theater and watch the movie? So, the text does not require a transfer of a possessory interest. But a consumer, when they purchase a movie ticket, does have a right to enter the theater and view that movie. If they aren't able to view the movie for whatever reason, the theater does not play the movie, then they're entitled to a refund of the price that they paid. So, yes, movie theaters do. That's true, but that doesn't necessarily mean that a movie theater comes under this videotape service provider provision. I mean, you go in and they say, oh, the movie's canceled. You say, okay, I would like my money back. But that doesn't have anything to do with this statute, does it? Well, the question was whether movies transfer a possessory interest in the movie itself. And in that way, because you're entitled to a refund, I believe the answer is yes. But backing up a little bit, the term delivery is commonly used in the context of movie theaters. Even the Supreme Court has quoted the Georgia Supreme Court in Paris Adult Theater to say that the delivery of obscene material is not protected by the First Amendment. Now, they were talking about adult movies in a theater, and they used the two words that are found in the statute, delivery and material. Ms. Rios, isn't, is delivery a more natural fit to the distributor of the movie? I mean, it seems like if we've got materials, and you refer to a mention of open reel movies in the legislative history, isn't it the distributor who's delivering that to the movie theater, not the movie theater that's distributing that to its customers? So in the context of the act, the provider is interacting or transacting directly with the consumer. And so a distributor would not be a provider under the act because they are not, they don't have that personally identifiable information for a consumer. But the theater is the one that maintains possession of the movie the entire time, the materials, right? That's correct. So how does the consumer get to take delivery or rent the movie at all when it's sitting back there in the projection booth? The consumer is sitting in a theater and receiving the audiovisual materials, literally the light and sound that make up a movie. And materials have been used to refer to the video content itself. Take, for example, the copyright context that defendant cites throughout its brief. It refers to the copyrighted materials. There it's not referring to the tape or the video cassette tape that the movie is recorded on. It's referring to the video content itself that is copyrighted. And so I'd like to reserve the rest of my time for a moment. I have a question since we mentioned legislative history. Are we supposed to just ignore the places in the legislative history where it talks about the privacy of what you watch and read in your own home? Should we just ignore that? Is that irrelevant? No, Your Honor. You do not have to ignore it. Those are vague references that are not made in the context of the definition of provider. So you should not rely on those references to narrow the definition of provider. But the statute, Section 2710, gives a wrongful disclosure of videotape rental or sale records. And it goes on about prerecorded videocassette tapes. It does seem to be consistent with that legislative history, doesn't it? No, because the text includes or delivery in a disjunctive list. The text is broader than the heading of the Act. If there are no more questions at this time, I'll reserve the rest of my time for rebuttal. Okay. You have a minute and 37 seconds. May it please the Court, my name is Bonnie Delgabo and I represent Silver Cinemas Acquisition Company, the defendant aptly in this matter. They do business as landmark theaters. This appeal presents an issue of statutory interpretation. So the focus is on the language of the statute that Congress gave us. And because that language is clear, that's where this appeal begins and ends. The language that Congress gave us to define the term videotape service provider is any person engaged in the business in or affecting interstate or foreign commerce of rental, sale, or delivery of prerecorded videocassette tapes or similar audiovisual materials. That sequence, rental, sale, or delivery followed by the word of, followed by prerecorded videocassette tapes or similar audiovisual materials, indicates that the statute covers businesses that either rent, sell, or deliver prerecorded videocassette tapes. But landmarks don't advertisements say that you have the best reputation for delivering film. And context is always key when interpreting a statutory provision. So what we have to look at here is the context that delivery is used in this particular provision in defining a videotape service provider. The word delivery in this provision follows the terms rental or sale. Rental, sale, or delivery of, and then the delivery has to be of either tapes or delivery of materials similar to tapes. It doesn't say delivery using. And the beginning part of that sequence, as the Court's question illustrated earlier, the first two words, rental and sale, they embody the concept of some form of transfer of a possessory interest or control in the tapes or in the materials because that's what the statute says. So is it your view that you need this possessory interest in order to fall within the statute? You would need to have some kind of interest, yes, in the tapes or in the materials that are similar to tapes in order to take delivery. Council said that, of course, technology has changed dramatically since the enactment of these provisions and we now have all kinds of streaming services. So in your view, would something like Netflix or Hulu qualify as a videotape service provider? I think that's an issue that should be decided in a case that involves a streaming service. Plaintiff's narrative on streaming services focuses on whether the act should apply to technology that developed after the statute was passed. But this appeal concerns movie theaters, which were around... Well, I realize that that's not what the case is, but I'm trying to understand the context of the statute now in 2024. So do you have a... What is your position on whether or not a Netflix or a Hulu or one of these other streaming services would fall within the statute? I don't think it's an issue that needs to be decided. I know you don't think it's an issue that needs to be decided, but it is a question I would like answered. I think an important distinction between the way that a streaming service works and what a movie theater business does is that even in the context of a streaming service, you are gaining some form of possession or control over the video materials because you can stop them, you can rewind them, you can watch them when and where you want. And so when Congress constructed this reference to prerecorded videocassette tapes or similar audiovisual materials, at a very minimum, that reference needs to mean materials over which you gain the ability to watch when and where you want. You have some form of possession or control over the materials. And that simply doesn't happen in a theater. If you show up late, if you want to go refill your popcorn halfway through or take a restroom break, you can't stop it or pause it or rewind it because you haven't taken an interest in the audiovisual materials. You've just bought a ticket, a license to be present at an event. And you miss out. Ms. Delgado, I guess, thanks for pursuing this because we do have to try to square this up. We'd like to square that up with some of the other cases. But what do we do, for example, with a case like the Vizio case where I think the court there described a supporting ecosystem to seamlessly deliver video content to consumers, referring here to the TV vendor. In other words, the person who had the screen, not the person who had the content. Is there a way to reconcile this case and that, in your view? It is a non-binding trial court opinion. But in any event, you're still looking at a company that sold a technology where the technology was used by the consumer to view video content. So again, in the context of a smart TV, you know, a consumer would still have the ability with a smart TV and the apps on a smart TV to have some kind of control over the video content. Should it really turn on that kind of control? I guess I recall that there might be some video streaming services where you can rent something only for 24 hours or it must stream continuously. Should our interpretation of the broad terms of this act turn on such minute differences in terms of what you can accomplish with a remote control? Again, I think this... You have to look at the context of rental, sale, or delivery. Given that context, given that it starts off with the terms rental or sale, there does have to be some kind of a transfer of an interest in the materials themselves. You never get any kind of interest in any video materials at all when you go to a theater. You just have a license to be present for that exhibition of the film. But you never have an interest in the actual materials. And notably, this statute references and covers only prerecorded videocassette tapes and similar, similar audiovisual materials. So the statute doesn't even cover all audiovisual materials. It expressly covers only those that are similar to prerecorded videocassette tapes. And particularly at the time this statute was passed, tapes and items similar to tapes would be the types of items that you could rent or purchase or have delivered to your home. And then you would have the option to control when and where you were going to view those materials. Because your interest is in the materials themselves. Something that doesn't happen. As far as the delivery goes, you've indicated... I mean, there's a certain capacious nature of delivery and how the word is used. Like you are delivering your remarks to us, for example. Do you think that the word is ambiguous in the statute and we should look at legislative history? Or what's your view on how we best interpret the word delivery? I think the context of the statute gives us everything that we need to interpret delivery in the manner that we're advocating this morning and in our briefs. I don't think we need to even look to legislative history. But to the extent the court does feel that it would be useful to look to legislative history, the legislative history only reinforces the position that we're advocating here. The legislative history is fairly extensive. It uses the word video over 50 times. It references movies only three times. All in the context of talking about movies that you view in one home. And it references movie theaters zero times. Not even once. But you would agree the statute also doesn't mention home or view at all, correct? The statutory language doesn't use the terms home or view. It uses the terms pre-recorded video cassette tapes and similar materials. But how different is it, if you go to a video rental store, everyone in line can see what you're browsing. Everyone in line can see what you are actually purchasing to view. So it just doesn't seem that there's a material difference in terms of the privacy interest there. And I know you argue in your brief, oh, well, you can always go and rent your movie when the store is empty. But that's true of a movie theater, right? You go to 8.30 a.m. showing, and you'd be the only one there. No one would see what you're watching. So how is it really materially distinct? I think the business models are very different. Because in a video store, if you really did want to preserve your personal privacy, you could just wait and go when the store was empty. You could put your items in a bag. You could wait to get in the checkout line until no one else was behind you. In a movie theater, if you've purchased a ticket to the film, you're going to be sitting in that theater for 90 minutes or two hours or however long the runtime of your film is. It's unlikely you're going to be the only person in the theater at that time. It's just very different interests that would be implicated in terms of whether it's the type of materials that you could view at a time and place of your choosing versus the types of materials... But you would agree the interest would be the same if the theater happens to be empty? I still think it's a very different business model. I don't think it's reasonable to have any kind of expectation of privacy in your attendance at a public theater where you're going to sit somewhere for 90 minutes or two hours. I guess the statute, if I may take you over your time a bit with one question, the statute refers to personally identifying information, and we haven't talked about that much right now, but isn't there enough on the complaint for us to find whether or not movie theaters are covered here that your client did, at least according to the allegations on the complaint, which you must take as true, share personally identifying information, or at least there's a factual question as to whether those pixels accomplish that? I don't think so. Below, we also moved on the basis that plaintiff had not alleged that there was a disclosure of personally identifiable information, or PII. That wasn't a basis that the district court addressed. It wasn't one plaintiff addressed in the briefing, and so it's probably an issue that would be best addressed by the lower court in the first instance to the extent that the videotape service provider angle wouldn't resolve the appeal, but I think that gateway definition of videotape service provider is the cleanest and easiest way to resolve that appeal. Okay, thank you. Thank you. Your Honors, the definition of deliver and materials advanced by defendant landmark is so narrow that it would essentially render the statute a dead letter, but there is no transfer of possessory interest required by the word delivery, and I'd like to mention the statutory structure, which is inconsistent with such a requirement, and that's because services were central to the act. They're included in all three primary definitions of the act, both video materials and services. That's in the text itself of the terms consumer and personally identifiable information, and in the term we're interpreting today, videotape service provider. Services are not physical, nor are they possessed by the consumers who receive them. Your no possessory interest argument requires us to read in the limitation that it can't be a tangible object. Is that right? That is right. The act is not limited to tangible objects. Materials, as Congress intended, was to refer to the video content itself. Why should we read in that limitation, non-tangible? I don't think it's a limitation, Your Honor. The limitation is it's about the video content, not whether it's physical or not, and that's consistent with the court's finding in the Netflix decision, for example, where materials was interpreted to mean something like reading material. It's video content. And so, yes, defendant is advocating for an interpretation of the term materials that would limit it to tangible items, tapes and things like tapes, but consumers do not watch video on, or rent or access purchase video on tapes or things like tapes anymore, and so it would essentially render the act a dead letter. I would also like to talk about the legislative history briefly you mentioned. The purpose was to promote intellectual freedom. Now, the risk to intellectual freedom is the same when you disclose a list of movies that you've selected, regardless of whether you rented those movies from a video rental store or whether you purchased movie tickets for them. In either case, you can be mocked and judged if that list of movies is disclosed without your consent, and that was just as Judge Robert Bork was before the act was passed. So the privacy interest here is the same, regardless of how the consumer accesses the movies at issue. You've gone a minute over your time. If my colleagues don't have any further questions, I'm going to thank you both for the very helpful argument. Really appreciate that.
judges: McKEOWN, KOH, JOHNSTONE